UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-23064-CIV-GAYLES/OTAZO-REYES

FRANCOIS ALEXANDRE,

    Plaintiff,

v.

CITY OF MIAMI, et al.,

    Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court upon Defendants, Officers Ruben Rojas, Magdiel Perez, Josue Herrera, and the City of Miami's Motion for Summary Judgment [ECF No. 84] and Defendant Javier Ortiz's Motion for Summary Judgment [ECF No. 86]. The Court has carefully reviewed the Motions, the record, argument of counsel, and the applicable law. For the reasons set forth below, the Motions are granted in part.

## BACKGROUND[1]

On June 21, 2013, the Miami Heat won the National Basketball Association Championship in game seven at American Airlines Arena. As in many cities after a home-team win, Heat fans celebrated in the streets of downtown Miami. Plaintiff Francois Alexandre ("Plaintiff") lived in the area and was outside celebrating with approximately thirty (30) other fans on the street in front of his apartment building. Plaintiff had consumed some alcohol but disputes that he was intoxicated.

Sometime after 1:30 in the morning, officers from the City of Miami Police Department were clearing the street near Plaintiff's apartment by forming a line while holding up their

---

[1]     The record includes video footage of the incident from Plaintiff's cell phone and a building security camera.

bicycles (the "bike line"). As the bike line moved forward, the officers issued a dispersal order, directing the crowd to move to the sidewalk and leave the area. Plaintiff, while filming on his cell phone, shouted "we ain't going home tonight," "we are tax-payers," and "don't take this bullshit from them." Despite his vocal protests, Plaintiff proceeded to comply with the officers' order and moved to the sidewalk. Once on the sidewalk, Plaintiff stated "we are on the sidewalk. Get the fuck out of here and do your business."

An unidentified woman then either fell or was pushed to the ground in front of the bike line. Plaintiff stopped to lean over the woman and then lifted his phone to continue recording the police. Seconds later, Defendant Lieutenant Javier Ortiz ("Ortiz") grabbed Plaintiff around the neck and pulled him into the alcove of Plaintiff's apartment building.[2] Several other officers, including Defendant Officers Josue Herrera ("Herrera"), Magdiel Perez ("Perez"), Ruben Rojas ("Rojas"), and Christopher Vital ("Vital"), immediately converged on top of Plaintiff and helped Ortiz throw him to the ground. At no time before Ortiz grabbed Plaintiff can Ortiz be heard telling Plaintiff that he was under arrest or asking Plaintiff to put his hands behind his back.

Once the officers were piled on Plaintiff, it is difficult to view from the video what was happening and the parties give conflicting accounts. Plaintiff contends that, once he was on the ground, his arms were pinned underneath his body. Defendants contend that Plaintiff was actively resisting arrest by keeping his arms underneath his body. Defendants admit that Vital punched Plaintiff two times and that Herrera used an open hand to strike Plaintiff to encourage a reach response from Plaintiff.[3] While Plaintiff asserts that he was punched, kicked, and thrown

---

[2] For this portion of the incident, the Court has the benefit of the security-camera footage, providing an aerial view with no sound, and Plaintiff's cell phone video footage, which no longer provides a good visual of the events (as Plaintiff has been thrown to the ground), but does provide an audio recording of both Plaintiff and the officers' voices.

[3] Vital has not been served and, pursuant to representations by the Defendants at the hearing, is no longer with the City of Miami Police Department.

to the ground, he does not know which officers inflicted the various blows. Plaintiff's injuries included a fractured orbital bone, lacerations and contusions. It is unclear whether Plaintiff's injuries were caused by the force used to throw him to the ground or the officers' punches and/or kicks to Plaintiff's body. While on the ground, Plaintiff told the officers, "I'm not resisting. I'm not resisting." In response, one or more officers told Plaintiff to "shut the fuck up." Within minutes, the officers handcuffed Plaintiff and led him to a patrol car. While walking to the car, one of the officers mocked Plaintiff saying, "you have lipstick on you sir, you have lipstick on you sir, now you need heels, now you need heels."

On September 26, 2017, Plaintiff filed his Amended Complaint against Defendants City of Miami (the "City") and Herrera, Ortiz, Rojas, Perez, Vital, and four unidentified City of Miami police officers (collectively, the "Individual Defendants"). Plaintiff alleges (1) § 1983 unlawful arrest against the Individual Defendants; (2) § 1983 excessive force against the Individual Defendants; (3) violation of the right to peaceably assemble against the Individual Defendants; (4) § 1983 false arrest and excessive force against the City; (5) false arrest under Florida law against the Individual Defendants; and (6) battery under Florida law against the Individual Defendants. *See* [ECF No. 66]. On December 15, 2017, Defendants Rojas,[4] Perez, Herrera, and the City filed a Motion for Summary Judgment [ECF No. 84]. Ortiz filed a separate Motion for Summary Judgment [ECF No. 86] on December 15, 2017.

## ANALYSIS

### Standard of Review

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is

---

[4] On January 30, 2018, the Court dismissed Officer Rojas from this action pursuant to Plaintiff's Motion for Voluntarily Dismissal [ECF No. 103].

entitled to judgment as a matter of law." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## I. False Arrest Claims Against the Individual Defendants

Plaintiff contends that he was arrested without probable cause in violation of the Fourth Amendment. "[A] warrantless arrest lacking probable cause violates the Constitution." *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018). However, "'the existence of probable cause at

the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest.'" *Id.* (quoting *Brown v. City of Huntsville,* 608 F.3d 724, 734 (11th Cir. 2010)).

To ascertain whether the Individual Defendants had probable cause to arrest Plaintiff, the Court must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Maryland v. Pringle,* 540 U.S. 366, 371 (2003)). Probable cause "is not a high bar," requiring "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (first quoting *Kaley v. United States,* 134 S.Ct. 1090, 1103 (2014), then quoting *Illinois v. Gates*, 462 U.S. 213, 243–44 n.13 (1983)).

Even without actual probable cause, a police officer is entitled to qualified immunity "if he had only 'arguable' probable cause to arrest the plaintiff." *Khokhar*, 884 F.3d at 1298. "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] <u>could</u> have believed that probable cause existed to arrest." *Id.* (quoting *Redd v. City of Enterprise,* 140 F.3d 1378, 1383–84 (11th Cir. 1998)) (emphasis added in *Khokhar*).

To determine whether an officer has actual probable cause or arguable probable cause, the Court looks at "the elements of the alleged crime and the operative fact pattern." *Id.* (quoting *Brown*, 608 F.3d at 735). Plaintiff was arrested and charged with incitement to riot, Florida Statute § 870.01, and resisting an officer without violence, Florida Statute § 843.02.[5] The "riot" statute provides that "all persons guilty of a riot, or of inciting or encouraging a riot, shall be

---

[5] Defendants also contend in their Motions that there was probable cause to arrest Plaintiff for violating Florida Statute § 316.130(3), a traffic regulation that prohibits pedestrians from walking upon paved roadways where sidewalks are provided. Because the Court finds the Individual Defendants had probable cause to arrest under § 843.02 and arguable probable cause to arrest under both § 843.02 and § 870.01, it declines to address whether a non-criminal traffic infraction can provide a basis for arrest.

guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084." Fla. Stat. § 870.01. The statute does not define riot, but the Florida Supreme Court, in holding that the statute was not void for vagueness, relied on the common law definition of riot. *State v. Beasley*, 317 So. 2d 750, 752 (1975). "The term 'riot' at common law is defined as a tumultuous disturbance of the peace by three or more persons, assembled and acting with a common intent, either in executing a lawful private enterprise in a violent and turbulent manner, to the terror of the people, or in executing an unlawful enterprise in a violent and turbulent manner." *Id.*

The Court finds it questionable whether the Individual Defendants had probable cause to arrest Plaintiff for inciting a "riot." The video footage does not show events that would cause an objectively reasonable police officer to believe there was a substantial chance that Plaintiff was inciting the crowd to engage in a tumultuous disturbance of the peace in a violent and turbulent manner. However, because the bar is so low, the Court is compelled to find arguable probable cause for the arrest. A reasonable officer certainly could have believed, upon hearing Plaintiff shout "we ain't going home tonight" and "don't take this bullshit from them," that Plaintiff was encouraging the crowd to act in a violent and turbulent manner. The Individual Defendants, therefore, have qualified immunity as to Plaintiff's constitutional false arrest claim.

The Court also finds that the Individual Defendants had actual probable cause to arrest Plaintiff for resisting the execution of the dispersal order. The elements of the crime of resisting an officer without violence under § 843.02 are (1) the officer was lawfully executing a legal duty and (2) the defendant acted in such a way as to obstruct or resist the execution of the officer's duty. *See B.M v. State*, 212 So. 3d 526, 528 (Fla. 2d DCA 2017). The video footage of the events leading up to Plaintiff's arrest shows Plaintiff, at one point, complying with the officers'

6

directive to move to the sidewalk, albeit under protest. However, after the woman falls to the ground, Plaintiff stops to film. A reasonable officer in the same circumstance possessing the same knowledge could certainly believe that there was a substantial probability that Plaintiff was resisting the dispersal order. *See Gates,* 462 U.S. at 243 n.13 (noting that "innocent behavior frequently will provide the basis for a showing of probable cause"). Accordingly, because the Individual Defendants had actual probable cause to arrest Plaintiff for resisting an officer without violence, they are entitled to summary judgment on both the constitutional false arrest claim (Count One) and the Florida false arrest claim (Count Five). *See Mas v. Metropolitan Dade County*, 775 So. 2d 1010, 1010 (Fla. 3d DCA 2001) (holding that probable cause is a complete bar to an action for false arrest under Florida law).

## II. First Amendment Claim

In Count Three, Plaintiff contends that the Individual Defendants, in arresting him, violated his First Amendment right to peaceably assemble. However, "when an officer has arguable probable cause to arrest, he is entitled to qualified immunity both from Fourth Amendment claims for false arrest and from First Amendment claims stemming from the arrest." *Khokhar*, 884 F.3d at 1298. Accordingly, the Individual Defendants are entitled to summary judgment on Count Three.

## III. Claims Against the City

In Count Four, Plaintiff seeks to hold the City liable for false arrest and excessive force claims. A municipality's liability under § 1983 may not be based on the doctrine of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The municipality is "liable under section 1983 only for acts for which [the municipality] is actually responsible," *Marsh v. Butler County*, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc), *abrogated on other grounds by Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544 (2007), *i.e.*, only when the municipality's "official policy" causes a constitutional violation, *Monell*, 436 U.S. at 694. Thus, to establish liability for a § 1983 claim against a municipality, the plaintiff must "identify a municipal 'policy' or 'custom' that caused [his] injury." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (quoting *Bd. Of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). Plaintiff therefore, has two methods through which he could establish the City's liability: "identify either (1) an officially promulgated [City] policy or (2) an un-official custom or practice of the [City] shown through the repeated acts of a final policy maker for the [City]." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc). Plaintiff fails to identify a City policy, custom, or practice that resulted in either his arrest or the use of force against him. Accordingly, the City is entitled to summary judgment on Count Four.

## IV. Excessive Force Claims Against the Individual Defendants

Plaintiff contends that the Individual Defendants violated his Fourth Amendment rights by using excessive force during his arrest. The Individual Defendants contend that their use of force was not excessive and that, even if it were, they are entitled to qualified immunity.

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1314 (11th Cir. 2017) (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)). The Individual Defendants bear the burden of establishing that the allegedly unconstitutional conduct occurred while they were acting within the scope of their discretionary authority, an undisputed issue in this case. The burden thus shifts to Plaintiff "to show that qualified immunity is not appropriate." *Id.* (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).

8

To ascertain whether a defendant is protected by qualified immunity, the Court engages in a two-part inquiry. First, do "the facts, taken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a federal right"? *Id.* (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014)). Second, was "the right in question . . . 'clearly established' at the time of the violation." *Id*. (quoting *Tolan*, 134 S. Ct. at 1865).

### A. Constitutional Violation – Excessive Use of Force

Under the Fourth Amendment, an officer's use of force is excessive if it was "objectively [un]reasonable in light of the facts and circumstances confronting" the officer. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the use of 20/20 hindsight." *Id.* at 396.

In determining whether an officer's use of force was within the bounds of the Fourth Amendment, the Court analyzes several factors, including "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* Courts "also consider 'the extent of the injury inflicted' and whether the use of force was proportionate to its need at the time." *Scott v. Battle*, 688 F. App'x 674, 677 (11th Cir. 2017) (quoting *Hadley*, 526 F.3d at 1329).

The Court finds that, viewing the record in the light most favorable to the Plaintiff, the Individual Defendants' use of force was excessive. First, Plaintiff's alleged crime was not severe. As detailed above, Plaintiff was essentially ignoring a dispersal order – a misdemeanor. He was not accused of a violent crime and was not acting in a violent manner. *See Stephens*, 852 F.3d at 1322 (finding that a misdemeanor did not "rise[] to the level of criminal conduct that

9

should have required the use of force"). Second, there is no indication in the record that Plaintiff was an immediate threat to the safety of the officers or others. Plaintiff, while perhaps verbally obnoxious, had no weapon and was not threatening anyone. *See Brand v. Casal*, 877 F.3d 1253, 1264 (11th Cir. 2017) *vacated as moot*, No. 16-10256 (11th Cir. May 1, 2018)[6] (finding that even though the plaintiff was "upset [and] agitated," there was no evidence that she posed a threat to officers or others). Third, there is a genuine issue of fact as to whether Plaintiff was resisting arrest at all. Despite the Individual Defendants' self-serving statements, the video depicts Plaintiff being thrown to the ground and covered by several officers. He can be heard stating "I'm not resisting." Indeed, it does not appear that Ortiz even told Plaintiff he was under arrest. Based on these factors, there was no reasonable need for the Individual Defendants to throw Plaintiff to the ground and to strike, kick, or smother him. *See id.* (finding use of force excessive, in part, because plaintiff "had not even been told she was under arrest at the time she was tased"); *Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011) ("[R]esisting arrest without force does not connote a level of dangerousness that would justify a greater use of force."); *Stephens*, 852 F.3d at 1323–24 (holding that officers' use of force was excessive where the plaintiff was compliant with police commands and never attempted to flee the scene).

The Court may also look to Plaintiff's injuries in assessing whether force was excessive. *See Scott,* 688 F. App'x at 677. Although an arrest generally involves some amount of force and injury, "the amount of force used by an officer in seizing and arresting a suspect 'must be reasonably proportionate to the need for that force.'" *Stephens*, 852 F.3d at 1324 (quoting *Lee*, 284 F.3d at 1198). The Individual Defendants threw Plaintiff against a wall and to the ground with a significant degree of force. They then piled on him and struck him, without giving

---

[6] The Eleventh Circuit vacated the opinion issued on December 19, 2017, based on the parties' settlement. *See Brand v. Casal*, No. 16-10256 (11th Cir. May 1, 2018)

Plaintiff a warning that he was under arrest or an opportunity to put his hands behind his back. The battery was severe enough to fracture Plaintiff's orbital bone and to cause facial lacerations and bruising. The Individual Defendants' use of force, on a non-violent man for what amounts to a misdemeanor, simply is not proportional to the need for that force. *See id.*, 852 F.3d at 1327 (finding use of force unreasonable where plaintiff was not resisting arrest yet ended up with severe injuries); *Scott*, 688 F. App'x at 677 (finding use of force–slamming the plaintiff to the ground with enough force that it broke her shin bone–excessive where plaintiff was secured and not resisting). Indeed, the Eleventh Circuit has held that "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Stephens*, 852 F.3d at 1327–28 (quoting *Hadley*, 526 F.3d at 1330)..

Accordingly, the Court finds that, based on the record before it and viewing the facts in the light most favorable to Plaintiff, the Individual Defendants' use of force in arresting Plaintiff was excessive and therefore a violation of Plaintiff's constitutional rights.

**B.     Clearly Established Law**

Having determined that the Individual Defendants violated Plaintiff's constitutional right to be free of excessive force, the Court must now determine whether the constitutional right was "clearly established" at the time of the incident such that the officers are not entitled to qualified immunity. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) *receded from by Pearson v. Callahan,* 555 U.S. 223, 236  (2009) (holding that while *Saucier's* two-step sequence for resolving  qualified immunity claims is often appropriate, courts may "exercise their sound discretion in deciding which of the two prongs should be addressed first in light of circumstances

11

in the particular case at hand") The Eleventh Circuit employs two methods to determine if a right is clearly established. *Stephens*, 852 F.3d at 1315. Under the first method, the Court looks at "the relevant case law at the time of the violation; the right is clearly established if a concrete factual context exists so as to make it obvious to a reasonable government actor that his actions violate federal law." *Id.* (quoting *Fils,* 647 F.3d at 1291). Under the second method, the Court looks "not at case law, but at the *officer's conduct*, and inquires whether that conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the officer, *notwithstanding the lack of fact-specific case law.*" *Id.* (quoting *Fils*, 647 F.3d at 1291). Actions that fall under this method—deemed obvious-clarity cases—are the exception to the rule that a controlling and similar case must establish a constitutional violation. *Id.*

1. Relevant Case Law

At the time of Plaintiff's arrest, there was law that clearly established that the amount of force used by the Individual Defendants to arrest Plaintiff, an unarmed and non-resisting suspect, was unlawful. In *Fils*, the Eleventh Circuit held that there was no qualified immunity for officers who tased a man who was only suspected of a misdemeanor, did not present a threat to the officers' safety or the safety of others, and was not resisting arrest or attempting escape. 647 F.3d at 1288–90. Similarly, in *Priester v. City of Riviera Beach,* the Eleventh Circuit held that there was no qualified immunity for an officer who released a police dog on a burglary suspect where the suspect posed no threat of bodily harm to the officers or others and had complied with the officer's request to lie down on the ground. 208 F.3d 919, 927 (11th Cir. 2000). In *Lee*, an officer detained a suspect for the offense of improperly honking her horn while driving. 284 F.3d at 1190–91. The officer then pulled the suspect from her car, handcuffed her, and slammed

her against the trunk of her car. There was a factual dispute as to whether the suspect was resisting arrest. The Eleventh Circuit affirmed the district court's denial of the officer's motion for summary judgment based on qualified immunity finding that the officer's use of force "after [the suspect] was arrested, handcuffed, and completely secured, and after any danger to the arresting officer as well as any right of flight had passed" was unreasonable. *Id.* at 1199.

Based on *Fils, Preister,* and *Lee*, the Court finds that no objectively reasonable officer in the position of the Defendant Officers could have thought that throwing Plaintiff to the ground, piling on top of him, and hitting him such that he suffered a fractured orbital bone was a constitutionally permissible use of force. Indeed, like the plaintiffs in the aforementioned cases, Plaintiff (1) disputes that he was resisting arrest—a position supported in part by the video and audio recordings, (2) was detained for a minor offense, and (3) was not threatening the safety of the officers or others around him. As a result, the Individual Defendants are not entitled to qualified immunity on Plaintiff's excessive force claim.

    2.    Obvious Clarity

The Court also finds that this action falls within the realm of the "obvious-clarity" cases. "In an obvious-clarity case, where the officer's conduct is plainly objectively unreasonable, a court does not need prior case law to determine the force used by the officer was excessive and unlawful, because it was disproportionate." *Stephens*, 852 F.3d at 1318. In *Stephens,* the plaintiff was arrested for driving without a valid driver's license. In effectuating the plaintiff's arrest, the officer struck the plaintiff several times, threw the plaintiff's head into the car-door jamb, and injured the plaintiff's hand. The Eleventh Circuit held that the officer's disproportionate use of force against the plaintiff was objectively unreasonable. *Id.* at 1328. Here, Plaintiff was outside of his apartment building celebrating with other Heat fans. He was not holding a weapon. He

was not threatening anyone. He was arrested without warning and thrown to the ground by several officers. He disputes that he was resisting arrest. Despite Plaintiff's repeated statements that he was "not resisting," the officers told him to "shut the fuck up" and proceeded to strike him. Plaintiff suffered significant injuries. Considering the evidence in the light most favorable to Plaintiff, the Court finds that the Individual Defendants' "gratuitous use of force" was disproportionate and objectively unreasonable. *Id.* (quoting *Hadley*, 526 F.3d at 1330). Accordingly, Defendants' motion for summary judgment as to the excessive force claim is denied.

### C. State Law Battery Claim

Plaintiff also alleges a Florida state law battery claim against the Individual Defendants. Under Florida law, "if excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery." *City of Miami v. Sanders*, 672 So. 2d 46, 46 (Fla. 3rd DCA 1996). "A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *Id.* The Court has already determined that this action must proceed to trial on whether the Individual Defendants' use of force was excessive. In addition, the Court cannot find, at this stage, that the Individual Defendants are shielded by Florida Statute § 786.28(9)(a), which provides that an officer cannot be held personally liable in tort if acting within the scope of his employment unless he acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). The Court finds there are disputed issues of fact as to whether the individual officers were acting in bad faith, with a malicious purpose, or in wanton and willful disregard of Plaintiff's rights, especially in light of the severity of Plaintiff's injuries under the circumstances and the subsequent mocking of those injuries by

one or more officers. Accordingly, Defendant's motion for summary judgment is denied as to Count Six.

## **CONCLUSION**

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that:

1. Defendant Officers Ruben Rojas, Magdiel Perez, Josue Herrera, and the City of Miami's Motion for Summary Judgment [ECF No. 84] and Defendant, Javier Ortiz's Motion for Summary Judgment [ECF No. 86] are **GRANTED in part**.

2. Summary Judgment is entered in favor of Defendants on Counts One, Three, Four and Five. The case will proceed to trial on Counts Two and Six.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of June, 2018.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE