# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

FILED BY_____ AP _____ D.C.

**Dec 2, 2019**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 02, 2019

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 18-12368-JJ
Case Style: Francois Alexandre v. Javier Ortiz, et al
District Court Docket No: 1:16-cv-23064-DPG

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

UNITED STATES COURT OF APPEALS
For the Eleventh Circuit

_____

No. 18-12368
_____

District Court Docket No.
1:16-cv-23064-DPG

FRANCOIS ALEXANDRE,

             Plaintiff - Appellee,

versus

JAVIER ORTIZ,
JOSUE HERRERA,
MAGDIEL PEREZ,

             Defendants - Appellants,

CITY OF MIAMI, et. al.,

             Defendants.

_____

Appeals from the United States District Court for the
Southern District of Florida
_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: October 10, 2019
For the Court: DAVID J. SMITH, Clerk of Court
By: Djuanna H. Clark

ISSUED AS MANDATE 12/02/2019

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12368
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-23064-DPG

FRANCOIS ALEXANDRE,

                                  Plaintiff-Appellee,

versus

JAVIER ORTIZ,
JOSUE HERRERA,
MAGDIEL PEREZ,

                                  Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(October 10, 2019)

Before JORDAN, BRANCH and BLACK, Circuit Judges.

PER CURIAM:

Appellants Lieutenant Javier Ortiz, and Officers Josue Herrera and Magdiel Perez of the City of Miami Police Department appeal the district court's denial of their motions for summary judgment on the basis of qualified immunity. Francois Alexandre claims the Appellants violated his Fourth Amendment rights by using excessive force during his arrest. The district court found that, viewing the facts in the light most favorable to Alexandre, the Appellants' use of force was excessive under both federal and state law, and the law was clearly established that their actions were unconstitutional, or alternatively, their conduct was such that it was plainly objectively unreasonable—an "obvious clarity" case. Given the facts of this case and the law from this Circuit in cases with materially similar facts, we conclude that Ortiz is entitled to qualified immunity on Alexandre's excessive force claims, but that Herrera and Perez are not. Accordingly, we reverse and remand with respect to Ortiz, and affirm with respect to Herrera and Perez.

## I. BACKGROUND

*A. Factual Background*

In this case we have both Alexandre's version of the facts and video footage of the incident from Alexandre's cell phone and a building security camera. The following facts are based on Alexandre's version of the events except when the video contradicts his version. *See Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010).

On June 20, 2013, the Miami Heat won the N.B.A. championship at home in the American Airlines Arena. Many people spilled into the streets of downtown Miami to celebrate the championship. Alexandre lived in downtown Miami at the Vizcayne Towers apartment complex on N.E. 2nd Street and celebrated with other Heat fans on the street in front of his apartment building.

Sometime after 1:30 in the morning of June 21, 2013, officers from the City of Miami Police Department were clearing the street[1] near Alexandre's apartment by forming a line while holding up their bicycles (the "bike line"). As the bike line moved forward, the officers issued a dispersal order, directing the crowd to move to the sidewalk and leave the area. Alexandre, while filming on his cell phone, shouted "we ain't going home tonight," "we are taxpayers," and "don't take this bullshit from them." Alexandre complied with the officers' order to move to the sidewalk, and once there yelled "we are on the sidewalk. Get the fuck out of here and do your business."

An unidentified woman was shoved to the ground in front of the bike line. Alexandre stopped to lean over the woman and then lifted his phone to continue recording the police. Seconds later, without any warning, Ortiz grabbed Alexandre in a headlock around the neck and pulled him into the alcove of Alexandre's

---

[1] The police had received a report that a crowd of civilians attempted to overturn vehicles in the vicinity of N.E. 2nd Street and Biscayne Boulevard. Ortiz is the only officer that reported seeing anyone trying to overturn a car in the area.

apartment building. Several other officers, including Herrera and Perez,[2] then converged to help Ortiz take Alexandre down. Video footage shows that once Ortiz took Alexandre down with the assistance of the other officers, Ortiz then stood up with his back to Alexandre to separate the crowd from the arrest going on behind him. At some point Ortiz gets back on the pile, but he is always in view of the camera and only near the lower part of Alexandre's body.

As to the officers other than Ortiz, once they were piled on top of Alexandre, it is difficult to view from the video what was happening at the top part of Alexandre's body, and the parties give conflicting accounts. Alexandre testified that he was not struggling to keep the officers from handcuffing him when he was on the ground, and he did not recall whether his hands were underneath his body. The video shows that once he is on the ground Alexandre is not kicking or flailing with the lower half of his body, and the audio supports that he told the officers, "I'm not resisting. I'm not resisting."[3] Appellants contend that Alexandre was actively resisting arrest by keeping his arms underneath his body. While on the ground, officers repeatedly told Alexandre to "stop resisting," and Alexandre responded, "I'm not resisting. I'm not resisting." In response, one or more of the

---

[2] Officers Ruben Rojas and Christopher Vital also converged on top of plaintiff. Vital was never served with Alexandre's complaint and is no longer with the City of Miami Police Department. Rojas was dismissed from this action on January 30, 2018, pursuant to Alexandre's Motion for Voluntary Dismissal.

[3] Once Alexandre is on the ground, his cell phone video contains only audio, but the building security camera provides video.

4

officers told Alexandre to "shut the fuck up." Appellants admit that Vital punched Alexandre two times and that Herrera used an open hand to strike Alexandre several times. While Alexandre asserts he was punched, kicked, and thrown to the ground, he does not know which officers inflicted the various blows. Within minutes, the officers handcuffed Alexandre and led him to a patrol car.

Alexandre was charged with inciting a riot and resisting arrest without violence, but all charges were later dismissed. Alexandre's injuries included a fractured orbital bone in the left side of his face, and abrasions to his face, eyes, and lips. He saw doctors for his injuries, including doctors at Bascom Palmer Eye Institute for his orbital bone injury. It is unclear whether Alexandre's injuries were caused by the force used to throw him to the ground or the officers' punches and/or kicks to Alexandre's body.

B. *Procedural Background*

On September 14, 2017, Alexandre filed an Amended Complaint against the City of Miami, and Ortiz, Herrera, Perez, Ruben Rojas, Christopher Vital, and four unidentified City of Miami police officers. Alexandre alleged (1) § 1983 unlawful arrest against the individual defendants; (2) § 1983 excessive force against the individual defendants; (3) violation of the right to peaceably assemble against the individual defendants; (4) § 1983 false arrest and excessive force against the City; (5) false arrest under Florida law against the individual defendants; and (6) battery

under Florida law against the individual defendants. The district court granted summary judgment in favor of the City and individual defendants on counts one, three, four, and five. Thus, the only remaining claims are count two—§ 1983 excessive force against Ortiz, Herrera, and Perez—and count six—battery under Florida law against Ortiz, Herrera, and Perez. Ortiz, Herrera, and Perez appeal the denial of qualified immunity on these claims.

## II.  DISCUSSION

### A. *Qualified immunity*

We review *de novo* a district court's disposition of a summary judgment motion based on qualified immunity, applying the same legal standards as the district court. *Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015). To receive qualified immunity, the public official must first show that he was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). It is undisputed that Appellants were acting within the scope of their discretionary authority. The burden then shifts to Alexandre to show that qualified immunity should not apply. *See Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012).

In order to find that Appellants are susceptible to suit, we must answer two questions in the affirmative. These questions may be answered in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). One, "[t]aken in the light most

favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). And two, was that right "clearly established"? *Id.*

It is well-established that qualified immunity protects government officials unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). We have stated that "only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." *Braddy v. Fla. Dep't of Labor & Emp't Sec.*, 133 F.3d 797, 801 (11th Cir. 1998) (quoting *Lassiter v. Ala. A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc)).

Three initial matters must be discussed before we begin our analysis. First, we reject Alexandre's argument that we lack jurisdiction over the appeal because only factual determinations are on appeal. Ortiz's appeal is a question of law, as he does not appeal the district court's factual determinations; rather he argues that the facts viewed in the light most favorable to Alexandre do not support an excessive force claim against him under Supreme Court and Eleventh Circuit law, and that he is thus entitled to qualified and state law immunity. *See Courson v. McMillian*, 939 F.2d 1479, 1486-88 (11th Cir. 1991) (stating whether a defendant is entitled to qualified immunity is a question of law; in other words, whether the

law at the time of the incident was clearly established so that a reasonable person should have known that he was violating it).  While Herrera and Perez do attempt to argue their case under their own version of the facts, they also appeal the district court's failure to look at their actions individually and present the legal question of their entitlement to qualified immunity.  Second, our analysis is informed by the fact Alexandre conceded at the summary judgment hearing that he is not bringing a failure to intervene claim against any of the Appellants.  And third, we review the actions of Ortiz separately from those of Herrera and Perez.  While in his complaint, Alexandre treated Appellants as a single group (as did the district court in denying summary judgment), the video shows that Ortiz's actions in Alexandre's arrest were different than those of Herrera and Perez.  We begin our analysis with Ortiz.

   *1. Ortiz*

Ortiz asserts the district court erred in denying him qualified immunity as a matter of law.  Specifically, he contends that his conduct is clearly shown in the video, and that his conduct does not rise to the level of a constitutional violation.  He asserts his conduct amounts to an ordinary takedown measure, and that there is no guiding case from this Court or the Supreme Court that would put him on notice that an ordinary takedown measure would rise to the level of excessive force by virtue of an unforeseeable serious injury.

Although the Fourth Amendment guarantees the right to be free from the use of excessive force during the course of an arrest, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Saucier*, 533 U.S. at 209 (quotations omitted). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "In order to determine whether the amount of force used by a police officer was proper, a court must ask whether a reasonable officer would believe this level of force is necessary in the situation at hand." *Lee*, 284 F.3d at 1197 (quotations omitted). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. "In applying the Graham objective-reasonableness standard, our circuit has identified three factors to evaluate for determining if the force used by an officer in making an arrest was objectively reasonable: (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1324 (11th Cir. 2017) (quotations omitted).

9

As to the need for force, while the police were trying to clear the street, Alexandre yelled "we ain't going home tonight," "we are taxpayers," and "don't take this bullshit from them." Once he was on the sidewalk, he told the officers to "[g]et the fuck out of here and do your business." A reasonable officer in Ortiz's position could think Alexandre posed a threat to other officers and the crowd, and police officers are often called upon to make split-second judgments "in circumstances that are tense, uncertain, and rapidly evolving," *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015) (quotations omitted). Therefore, Ortiz was entitled to use some degree of force in taking Alexandre down to effectuate the arrest. *See Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003) ("This circuit has made clear that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense."). After Alexandre is taken down to the ground, the video shows that Ortiz is not involved in the pile of officers on top of Alexandre. Instead, he had his back to the other officers and Alexandre.[4] When he returns to the pile, he is in view of the camera at the lower half of Alexandre's body, and the video does not show him hitting or kicking Alexandre.

---

[4] We once again emphasize that Alexandre is not bringing a failure to intervene claim against Ortiz.

As to the amount of force, the force used here by Ortiz was no more severe than the force we have described as *de minimis* and lawful in other materially similar cases.  In *Nolin v. Isbell*, we concluded that an officer used *de minimis* force that was not actionable when he grabbed the plaintiff from behind by the shoulder and wrist, threw him against a van three of four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him.  207 F.3d 1253, 1255, 1258-59 (11th Cir. 2000).  In *Durruthy*, the plaintiff brought a claim of excessive force against a police officer who "force[d] [the plaintiff] down to the ground and plac[ed] him in handcuffs."  351 F.3d at 1094.  We reversed the denial of qualified immunity because we concluded the officer used only *de minimis* force to arrest the plaintiff. *Id.*  In *Croom v. Balkwill*, the plaintiff brought a claim of excessive force against a deputy sheriff who forced the plaintiff to the ground from a squatting position and held her there with a foot (or knee) in the back for up to ten minutes.  645 F.3d 1240, 1252 (11th Cir. 2011). We affirmed the district court's grant of summary judgment in favor of the defendant on the basis that the force used against the plaintiff, even if unnecessary, was *de minimis*. *Id.* at 1253.  And, in *Myers v. Bowman*, the plaintiff brought a claim of excessive force against a deputy sheriff who "grabbed [the plaintiff] by the arm, forced him to the ground, placed him in handcuffs" and "held [him] to the ground for less than one minute before he helped

11

[him] to his feet." 713 F.3d 1319, 1328 (11th Cir. 2013). We affirmed the district court's grant of summary judgment in favor of the defendant because the force used against the plaintiff was *de minimis*. *Id.*

Nor does the fact that Alexandre suffered an injury defeat qualified immunity for Ortiz. Although unfortunate, assuming Alexandre's injury occurred while Ortiz and the other officers took down Alexandre during the normal course of an arrest, Ortiz was not put on notice that those actions were potentially unlawful. We consider the circumstances surrounding the arrest and do not rely solely on an ex post assessment of the resulting injury. *See Lee*, 284 F.3d at 1200 (stating "reasonable force does not become excessive force when the force aggravates (however severely) a preexisting condition . . . unknown to the officer at the time" (quotations omitted)); *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (holding that, despite the gravity of this injury, the force used by the officer did not rise to the level of a constitutional violation because he had used an otherwise "common non-excessive handcuffing technique," and had no knowledge of the plaintiff's preexisting condition).

On these facts, the district court's denial of Ortiz's motion for summary judgment on the basis of qualified immunity is erroneous. While the use of gratuitous force when a suspect is not resisting arrest violates the Fourth Amendment, *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008), "the

application of de minimis force, without more, will not support" an excessive force claim and "will not defeat an officer's qualified immunity," *Nolin*, 207 F.3d at 1257. Even assuming that Alexandre was not resisting, Ortiz was allowed to use some force in effectuating Alexandre's arrest. *See Graham*, 490 U.S. at 396; *Durruthy*, 351 F.3d at 1094. Ortiz is therefore entitled to qualified immunity.

### 2. *Herrera and Perez*

Herrera and Perez argue they are entitled to qualified immunity because "the uncontroverted evidence shows that neither officer used excessive force that could have contributed to Appellee's injuries." The problem with their argument is that they are using their own version of the facts to reach this conclusion, not viewing the facts in the light most favorable to Alexandre. Their entire argument is premised on their version of the facts—that Alexandre "refused to put his arms behind his back to be handcuffed despite repeated request to stop resisting." However, Alexandre asserts that he was not resisting. The video and audio do not contradict his claims—Alexandre can be heard on the audio saying "I'm not resisting," and the video shows that he was not flailing or kicking his legs while the pile of officers was on top of him. Herrera and Perez make no argument that, under Alexandre's version of the facts, in which he is not resisting arrest, they could punch and hit him to effectuate an arrest without being in violation of the Fourth Amendment. Nor could they. Our caselaw is clearly established that the

13

use of gratuitous force on a non-resisting arrestee would violate the Fourth Amendment. *Hadley*, 526 F.3d at 1330.

Additionally, while Herrera and Perez argue the district court should have looked at each officer's conduct separately, citing *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018), they are incorrect. In *Alcocer*, a case where a plaintiff alleged she was illegally detained without probable cause, each defendant's actions and knowledge could be analyzed separately. In the instant case, as detailed above, Ortiz's actions could be analyzed separately because of the video evidence. However, under Alexandre's version of the facts and the video evidence, it is impossible to separate the actions of Herrera and Perez from the larger group. In *Skritch v. Thornton*, we rejected "the argument that the force administered by each defendant in this collective beating must be analyzed separately to determine which of the defendants' blows, if any, used excessive force." 280 F.3d 1295, 1302 (11th Cir. 2002). Further, in *Velazquez v. City of Hialeah*, we rejected the argument that because the plaintiff did not see who beat him, there would be no evidence at trial from which a jury might assign liability for the beating. 484 F.3d 1340, 1342 (11th Cir. 2007). "Were this the law, all that police officers would have to do to use excessive force on an arrestee without fear of consequence would be to put a bag over the arrestee's head and administer the beating in silence." *Id.* Even without a failure to intervene claim, a jury could find that both Herrera and

14

Perez administered blows that resulted in Alexandre's fractured orbital bone in the left side of his face, and abrasions to his face, eyes, and lips. Thus, on this record, the district court did not err in denying qualified immunity to Herrera and Perez.

*B. Immunity under Florida Law*

> Section 768.28(9)(a), Florida Statutes states that:
>
> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). The Florida Supreme Court has confirmed that § 768.28(9)(a) provides immunity from suit rather than simply liability, *Keck v. Eminisor*, 104 So. 3d 359, 366 (Fla. 2012), and we have held that an order denying official immunity from suit under state law is immediately appealable, *Griesel v. Hamlin*, 963 F.2d 338, 341 (11th Cir. 1992). Thus, we have jurisdiction to review the district court's order denying immunity under § 768.28(9)(a) for the state law claims.

As quoted above, § 768.28(9)(a) protects an officer from personal liability for acts within the scope of his employment, unless the officer "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." In determining whether an officer is entitled

15

to summary judgment as a result of the immunity provided by § 768.28(9)(a), the relevant inquiry is "whether a reasonable trier of fact could possibly conclude that the [officer's] conduct was willful and wanton, or would otherwise fall within the exceptions to the statute." *Furtado v. Yun Chung Law*, 51 So. 3d 1269, 1277 (Fla. 4th DCA 2011) (quotations omitted); *see also Thompson v. Douds*, 852 So. 2d 299, 310 (Fla. 2d DCA 2003) ("Because the record shows that there are genuine issues of material fact as to whether the officers acted with wanton and willful disregard of [the arrestee's] rights and safety, the trial court's decision to grant summary judgment on the basis of statutory immunity was improper.").

Similar to our analysis of the qualified immunity issue, we conclude there is not sufficient evidence to raise a question of fact as to whether Ortiz acted willfully or with malice in conducting a takedown measure to effectuate Alexandre's arrest. There is also no evidence that Ortiz hit or struck Alexandre once the takedown measure was complete. Ortiz is entitled to summary judgment on this issue.

Conversely, there is sufficient evidence to raise a question of fact as to whether Herrera and Perez acted willfully or with malice in allegedly hitting and striking Alexandre once he was on the ground and allegedly not resisting arrest. Accordingly, Herrera and Perez are not entitled to summary judgment on the state law claims based on immunity provided by § 768.28(9)(a).

## III.  CONCLUSION

Accordingly, we reverse the decision of the district court with regard to Ortiz and remand with instructions to grant his motion for summary judgment. We affirm the decision of the district court as to Herrera and Perez.

**AFFIRMED in part; REVERSED AND REMANDED in part.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 10, 2019

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 18-12368-JJ
Case Style: Francois Alexandre v. Javier Ortiz, et al
District Court Docket No: 1:16-cv-23064-DPG

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, each party to bear own costs.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tiffany A. Tucker, JJ at (404)335-6193.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs